# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE PEMBRICK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOYAL SOURCE GOVERNMENT SERVICES, LLC, a Florida Limited Liability Company, et al.,<br><br>Defendants. | Case No.: 3:24-cv-01524-RBM-DEB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**[Doc. 9]** |

On July 22, 2024, Plaintiff Monique Pembrick ("Plaintiff"), on behalf of herself and all others similarly situated, filed a Representative Action Complaint for Civil Penalties Under the Private Attorneys General Act ("PAGA"), California Labor Code § 2698 *et seq.* ("Complaint"). (Doc. 1-2 ["Compl."] at 6–17.[1])

Pending before the Court is Defendant Loyal Source Government Services, LLC's ("Defendant") Motion to Compel Arbitration ("Motion"), which was filed on January 24,

---

[1] The Court cites to the CM/ECF pagination unless otherwise noted.

2025. (Doc. 9.) On February 10, 2025, Plaintiff filed an Opposition to Defendant's Motion ("Opposition"). (Doc. 12.) On February 14, 2025, Defendant filed a Reply in Support of its Motion ("Reply"). (Doc. 13.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, Defendant's Motion is **DENIED**.

## I.   BACKGROUND

**A.   Factual Background**

Defendant identifies several different arbitration agreements executed or transmitted between the Parties. The Court briefly summarizes each agreement here.

**1.   Mutual Arbitration Agreement**

On April 6, 2022, Plaintiff signed a Mutual Arbitration Agreement, a copy of which was attached to her offer of employment. (Doc. 9-3 at 8–10 [Declaration of Javier Rodriguez ("Rodriguez Decl."), ¶ 3, Ex. A].) The Mutual Arbitration Agreement provides:

> The Parties hereby acknowledge and agree that, except for Disputes Not Covered, which is defined below, (i) any and all claims or disputes arising out of, related to, or in connection with my offer of employment letter, as well as (ii) any and all other claims or disputes between the Parties arising out of, related to, or in connection with my employment with or termination from LSGS (collectively, 'Disputes') shall be resolved exclusively through final and binding arbitration, and not by way of a court or jury trial, as set forth in this Agreement.
>
> …
>
> Disputes Not Covered by this Agreement shall mean claims for workers' compensation, unemployment compensation benefits, administrative charges for unfair labor practices brought before the National Labor Relations Board, claims which cannot be waived under applicable law, or any other claims that, as a matter of law, the Parties cannot agree to arbitrate.

(*Id.* at 8.) The Mutual Arbitration Agreement did not identify PAGA claims as a "Dispute Not Covered."

## 2. Voluntary Employee Arbitration Agreement

On May 18, 2022, Plaintiff signed a Voluntary Employee Arbitration Agreement. (Doc. 9-3 at 12–14 [Rodriguez Decl., ¶ 4, Ex. B].) The Voluntary Employee Arbitration Agreement provides:

> The Parties agree that, to the fullest extent permitted by law, any and all claims or controversies between them … relating in any manner to the employment or the termination of employment of Employee, including claims or controversies that arose, existed, or accrued prior to the signing of this Agreement … , that are currently pending as of the signing of this Agreement, and that may arise or accrue after the signing of this Agreement, including claims that may arise or accrue during employment with the Company, and including but not limited to the interpretation, applicability, or enforceability of this Agreement, shall be resolved by final and binding arbitration.

(*Id.* at 12.)   However, the Voluntary Employee Arbitration Agreement provides that "claims under California's Private Attorney General's Act ('PAGA') … shall not be subject to arbitration (the 'Excluded Claims')." (*Id.*)

## 3. Employee Arbitration Agreement

On July 27, 2022, Plaintiff signed an Employee Arbitration Agreement. (Doc. 9-3 at 16–18 [Rodriguez Decl., ¶ 5, Ex. C].) The Employee Arbitration Agreement provides:

> The Parties agree that, to the fullest extent permitted by law, any and all claims or controversies between them … relating in any manner to the employment or the termination of employment of Employee, including claims or controversies that arose, existed, or accrued prior to the signing of this Agreement … , that are currently pending as of the signing of this Agreement, and that may arise or accrue after the signing of this Agreement, including claims that may arise or accrue during employment with the Company, and including but not limited to the interpretation, applicability, or enforceability of this Agreement, shall be resolved by final and binding arbitration.

(*Id.* at 16.)   Unlike the Voluntary Employee Arbitration Agreement, the Employee Arbitration Agreement did not identify PAGA claims as "Excluded Claims." (*Id.*)

## 4. July Voluntary Employee Arbitration Agreement

On July 28, 2022, Plaintiff signed a second Voluntary Employee Arbitration

1  Agreement (the "July Voluntary Employee Arbitration Agreement").  (Doc. 9-3 at 20–22
2  [Rodriguez Decl., ¶ 6, Ex. D].)  The July Voluntary Employee Arbitration Agreement
3  provides:

> The Parties agree that, to the fullest extent permitted by law, any and all claims or controversies between them … relating in any manner to the employment or the termination of employment of Employee, including claims or controversies that arose, existed, or accrued prior to the signing of this Agreement … , that are currently pending as of the signing of this Agreement, and that may arise or accrue after the signing of this Agreement, including claims that may arise or accrue during employment with the Company, and including but not limited to the interpretation, applicability, or enforceability of this Agreement, shall be resolved by final and binding arbitration.

(*Id.* at 20.)  However, the July Voluntary Employee Arbitration Agreement also provides that "claims under California's Private Attorney General's Act ('PAGA') shall not be subject to arbitration (the 'Excluded Claims')."  (*Id.*)

The July Voluntary Employee Arbitration Agreement also contains a Class Action Waiver.  (*Id.* at 20–21.)  The Class Action Waiver provides:

> EXCEPT TO THE EXTENT THAT REPRESENTATIVE CLAIMS UNDER PAGA ARE EXCLUDED FROM THIS ARBITRATION AGREEMENT, AND EXCEPT AS PROVIDED OTHERWISE BY LAW AND HEREIN, EMPLOYEE AGREES THAT ALL CLAIMS MUST BE BROUGHT IN HIS OR HER INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR PARTICIPATING CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE, OR CONSOLIDATED PROCEEDING, AND EMPLOYEE EXPRESSLY WAIVES ANY RIGHT EMPLOYEE HAD OR MAY HAVE HAD TO HAVE ANY DISPUTE BROUGHT, HEARD, OR ARBITRATED AS A CLASS ACTION AND/OR AS A COLLECTIVE ACTION.

(*Id.* at 20 (emphasis in original).)

Finally, the July Voluntary Employee Arbitration Agreement provides:

> The Company and Employee understand and agree that this Arbitration Agreement contains a full and complete statement of any agreements and understandings regarding resolution of disputes between the parties, and the parties agree that *this Agreement supersedes all previous agreements, whether*

> *written or oral, express or implied*, relating to the subjects covered in this Agreement. The parties also agree that the terms of *this Agreement cannot be revoked or modified except in a written document* signed by both Employee and an authorized executive of the Company.

(*Id.* at 22 (emphasis added).)

### 5. Dispute Resolution Notice and Unsigned Mutual Arbitration Agreement

On October 15, 2024, Defendant electronically transmitted to Plaintiff an "Important Notice Regarding Dispute Resolution with Loyal Source Government Services, LLC" (the "Dispute Resolution Notice"). (Doc. 9-3 at 24–28 [Rodriguez Decl., ¶ 7, Ex. E].) The Notice states, "[y]our agreement to the terms and conditions of the attached mutual arbitration agreement is a mandatory condition of employment with Loyal Source Government Services. Continued employment evidences your acceptance to those terms and conditions." (*Id.* at 24.) The attached Mutual Arbitration Agreement, which is unsigned, (the "Unsigned Mutual Arbitration Agreement") provides:

> Loyal Source Government Services, LLC … , and the undersigned … hereby agree that, to the fullest extent permitted by law, any and all past, current, or future claims or controversies between them … , or between Employee and any client of Company to which Employee is assigned or otherwise performs any work … , arising out of or relating in any manner to the recruitment, hiring, employment, or the termination of employment of Employee, including but not limited to the interpretation, applicability, enforceability … of this Agreement or other arbitrability disputes, shall be resolved by final and binding arbitration.

(*Id.* at 25.) The Unsigned Mutual Arbitration Agreement does not identify PAGA claims as "Excluded Claims."

The Unsigned Mutual Arbitration Agreement also contains a Class, Collective, and Representative Action Waive, which provides:

> Employee further understands and agrees that, to the maximum extent permitted by law, any claim under [PAGA] shall be filed in arbitration and solely as an individual claim. The parties acknowledge, however, that as of the date of this Agreement, California law provides that, if an employee

establishes that he or she is an aggrieved employee within the meaning of PAGA in arbitration, the employee shall have standing to pursue applicable non-individual PAGA claims in a court of law. The Parties agree that so long as this remains the state of the law, this representative action waiver shall not apply to non-individual PAGA claims asserted by an employee who first establishes that he or she is an aggrieved employee under PAGA in an individual arbitration. However, in the event that the state of the law changes (for example, due to a change in California law, or because federal law is held to preempt California law on this point), then Employee: (i) expressly waives any right Employee had or may have had to have any dispute brought, heard, or arbitrated as a representative action; … (ii) agrees that Employee may not assert non-individual PAGA claims whether in arbitration or otherwise; and (iii) agrees that any PAGA claim shall proceed solely as to the individual PAGA claim of Employee and not any other allegedly aggrieved employees or the general public. The arbitrator has no authority to adjudicate representative proceedings, other than to enforce this provision.

(*Id.* at 26.)

**B.    Defendant's Motion**

In its Motion, Defendant first argues that a valid arbitration agreement exists. (Doc. 9-1 at 10–11.) Specifically, Defendant argues that the July Voluntary Employee Arbitration Agreement is valid because (1) Plaintiff signed and initialed the agreement, and (2) its title and terms are written clearly and in plain language, including a provision stating "THE PARTIES ACKNOWLEDGE AND AGREE THAT THEY ARE EACH EXECUTING THIS ARBITRATION AGREEMENT WITHOUT DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE." (*Id.* at 11 (quoting Doc. 9-3 at 22, Rodriguez Decl., ¶ 6, Ex. D).)

Defendant then argues that Plaintiff's claim is covered by the July Voluntary Employee Arbitration Agreement. (*Id.* at 11–12.) Specifically, Defendant argues that, although the July Voluntary Employee Arbitration Agreement excludes claims brought under PAGA, the Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) ("*Viking*") now permits the arbitration of PAGA claims. (*Id.* at 10, 12.) Defendants asserts that, after *Viking*, the inclusion of PAGA as an "Excluded Claim"

directly contradicts the provision stating: "'[t]he Parties agree that, *to the fullest extent permitted by law*, any and all claims or controversies between them … relating in any manner to the employment or the termination of employment of Employee … shall be resolved by final and binding arbitration.'" (*Id.* at 12 (quoting Doc. 9-3 at 20–22 [Rodriguez Decl., ¶ 6, Ex. D]) (emphasis added).) Defendant seems to assert that, in the face of this inconsistency, the Court must defer to the intent of the parties, which is to arbitrate any and all claims arising from Plaintiff's employment. (*Id.* at 12–13.)

Defendant also argues that no grounds exist to revoke the July Voluntary Employee Arbitration Agreement. (*Id.* at 13–15.) Specifically, Defendant argues that the July Voluntary Employee Arbitration Agreement is neither procedurally unconscionable nor substantively unconscionable. (*Id.*) Lastly, Defendant argues that, while Plaintiff's individual PAGA claims must be compelled to arbitration, Plaintiff's non-individual PAGA claims must be stayed pending arbitration. (*Id.* at 15–16.)

**C.    Plaintiff's Opposition**

In her Opposition, Plaintiff asserts that the July Voluntary Employee Arbitration Agreement specifically excludes PAGA claims. (Doc. 12 at 5–6.) Plaintiff also asserts that she did not sign or agree to the Dispute Resolution Notice or the Unsigned Mutual Arbitration Agreement.[2] (*Id.* at 6–9.)

## II.    LEGAL STANDARD

"The Federal Arbitration Act ['FAA'], § 2, provides that a 'written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a

---

[2] In its Reply, Defendant re-asserts that, after the Supreme Court's decision in *Viking River*, the exclusion of PAGA claims contradicts the provision providing for arbitration to the fullest extent permitted by law. (Doc. 13 at 2.) Defendant also re-argues that Plaintiff's PAGA claims must be arbitrated "to comport with the intent of the whole contract." (*Id.*) Finally, Defendant asserts that Plaintiff accepted the terms of the Dispute Resolution Notice and the Unsigned Mutual Arbitration Agreement through her continued employment. (*Id.* at 2–3.)

controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273 (1995) (quoting 9 U.S.C. § 2); *see also Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). "Congress enacted the FAA to overcome judicial resistance to arbitration, and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (internal citations and quotations omitted). Thus, "[t]he [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration … ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

### III.  DISCUSSION

"Section 4 of the FAA states that 'a party aggrieved by the alleged failure, neglect, or refusal of another to arbitration under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Lytton v. S. Cal. Reg'l Rail Auth.*, 683 F. Supp. 3d 1101, 1105 (C.D. Cal. 2023) (quoting 9 U.S.C. § 4). "A court reviewing a motion to compel arbitration under this section of the FAA, must determine: '(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue.'" *Id.* (quoting *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015)); *see also Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020) ("Because the [FAA] leaves no place for the exercise of discretion by a district court, a federal court's role is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.") (citations and quotation omitted). The Court addresses each issue in turn.

**A.  Valid, Written Agreement to Arbitrate**

As set forth above, the Court must determine whether a valid agreement to arbitrate exists. *Revitch*, 977 F.3d at 716. In its Motion, Defendant appears to concede that the July Voluntary Arbitration Agreement is the valid, operative agreement despite summarizing

several other agreements executed or transmitted between the Parties. Defendant states that it "expects Plaintiff to focus on the [July Voluntary Employee Arbitration Agreement]" (Doc. 9-1 at 10) and then argues that the July Voluntary Employee Arbitration Agreement is valid because (1) Plaintiff signed and initialed the agreement and (2) its title and terms are written clearly and in plain language (*id.* at 11 (quoting Doc. 9-3 at 20–22 [Rodriguez Decl., ¶ 6, Ex. D])). Defendant does not argue for the validity of any other agreement.

Plaintiff also does not dispute the validity of the July Voluntary Arbitration Agreement. Plaintiff asserts that the July Voluntary Arbitration Agreement is the "applicable arbitration agreement." (Doc. 12 at 6.) Thus, the Court finds that the July Voluntary Arbitration Agreement is the valid, operative agreement to arbitrate, and the Court need not address the remaining agreements summarized by Defendant in the introduction to its Motion.[3] The Court now turns to whether the July Voluntary Arbitration Agreement encompasses the dispute at issue.

**B.     Agreement to Arbitrate Encompasses the Dispute at Issue**

As set forth above, the Court must also determine whether the operative arbitration agreement encompasses the dispute at issue. *See Revitch*, 977 F.3d at 716. While there is a policy in favor of arbitration, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (citing *United Steelworkers of Am. v. Warrior & Gulf*

---

[3] The Court also need not reach Defendant's unconscionability arguments. (*See* Doc. 9-1 at 13–15.) As Defendant notes, Plaintiff "bears the burden of proving that the arbitration agreement is unenforceable[,]" and Plaintiff has not made any such argument here. (*Id.* at 13 (citing *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1149 (2013)); *see also* Doc. 12 at 4–9.) Additionally, the Court need not reach Plaintiff's arguments regarding the Dispute Resolution Notice and the Unsigned Mutual Arbitration Agreement. Even so, the Court notes that the July Voluntary Employee Arbitration Agreement precludes modification or revocation "except in a written document signed by both" parties. (Doc. 9-3 at 20–22 [Rodriguez Decl., ¶ 6, Ex. D].) The Court also notes that the Unsigned Mutual Arbitration Agreement was transmitted to Plaintiff approximately three months ***after*** the filing of Plaintiff's Complaint. (*See* Compl. at 6; Doc. 9-3 at 2 [Rodriguez Decl., ¶ 7].)

*Nav. Co.*, 363 U.S. 574, 582 (1960)). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Under California law, "[a]rbitration is strictly a matter of consent." *Duran v. EmployBridge Holding Co.*, 92 Cal. App. 5th 59, 65 (2023). "A party cannot be required to arbitrate a dispute that he or she has not agreed to submit to arbitration." *Id.* (citing *Sandquist v. Lebo Automotive, Inc.*, 1 Cal.5th 233, 252 (2016)). "Whether the parties agreed to arbitrate all or a portion of 'the present controversy turns on the language of the arbitration clause.'" *Id.* (quoting *EFund Cap. Partners v. Pless*, 150 Cal. App. 4th 1311, 1320 (2007)).

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. Further, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible … ." *Id.* § 1639. "The policy in favor of arbitration does not apply when the contract cannot be interpreted in favor of arbitration." *Balandran v. Lab. Ready, Inc.*, 124 Cal. App. 4th 1522, 1528 (2004); *see also Duran*, 92 Cal. App. 5th at 66 ("The policy favoring arbitration … does not apply when unambiguous language shows the parties did not agree to arbitrate all or a part of the dispute.").

Here, the valid and operative July Voluntary Arbitration Agreement specifically and unambiguously excludes PAGA claims from its arbitration provision. (*See* Doc. 9-3 at 20–22 [Rodriguez Decl., ¶ 6, Ex. D] ("[C]laims under [PAGA] shall not be subject to arbitration … .").) As written, the provision is clear and unambiguous, includes no qualifying language, and cannot reasonably be interpreted to mean the Parties agreed to arbitrate any category of PAGA claims. *See Duran*, 92 Cal. App. 5th at 66 ("We conclude the language stating claims under PAGA are not arbitrable under the agreement is unambiguous. It cannot be reasonably interpreted to mean the parties agreed to arbitrate the category of PAGA … claims seeking to recover penalties for Labor Code violations

suffered by plaintiff.").

Nevertheless, Defendants argue that, after the Supreme Court's decision in *Viking River*, which now permits the arbitration of certain PAGA claims, the inclusion of PAGA as an "Excluded Claim" directly contradicts the July Voluntary Employee Arbitration Agreement's general arbitration provision. (*Id.* at 12.) Defendant seems to assert that, in the face of this purported inconsistency, the Court must defer to the intent of the Parties, which is to arbitrate all claims arising from Plaintiff's employment. (*Id.* at 12–13; *see also* Doc. 13 at 2.) Although not explicit, Defendant seems to offer the various arbitration agreements summarized above (*see* Section I.A) as evidence of the Parties' intent. The Court, however, is not persuaded. The California appellate court's ruling in *Duran* is instructive.

In *Duran*, the defendant argued that the clear intent of a PAGA exclusion provision at issue, which is similar in form to the PAGA exclusion provision at issue here, was to identify claims that applicable law prohibits from being arbitrated. *Duran*, 92 Cal. App. 5th at 66. The *Duran* court rejected this argument, stating "we will not rewrite the parties' agreement." *Id.* at 67. The *Duran* court elaborated, "[i]f [the defendant] intended the clause to be a truism—that is, only nonarbitrable PAGA claims would not be arbitrable under the agreement—it should have drafted the clause to say so. Alternatively, [the defendant] should have presented extrinsic evidence showing this alleged intention was communicated between the parties." *Id.* at 67–68 (internal citations omitted).

Here too, if Defendant intended to agree that "only nonarbitrable PAGA claims would not be arbitrable" under the July Voluntary Arbitration Agreement, they "should have drafted the clause to say so." *Id.* at 67 (citations omitted). Indeed, *Viking River* was decided on June 12, 2022, more than one month before the execution of the July Voluntary Employee Arbitration Agreement. Additionally, one day prior, the Parties executed an Employee Arbitration Agreement that did not exclude PAGA claims. This series of events underscores that, had Defendant wanted to update its arbitration agreement to reflect the change in law, they could have done so. Instead, Defendant did not update its agreement

until October 15, 2024 (Doc. 9-3 at 2 [Rodriguez Decl., ¶ 7]), more than two years later, and approximately three months after the filing of Plaintiff's Complaint.

Finally, the various arbitration agreements submitted by Defendant are not "extrinsic evidence" of Defendant's intent to only exclude claims non-arbitrable by law. *Duran*, 92 Cal. App. 5th at 68. Indeed, Defendant has not explained why the Parties executed multiple arbitration agreements, each with distinct arbitration provisions, and each succeeding arbitration agreement does not appear to reflect a change in the law.

## IV.  CONCLUSION

Based on the foregoing, Defendant's Motion is **DENIED**.[4]

**IT IS SO ORDERED.**

DATE:  July 28, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[4] Defendant's request to stay Plaintiff's non-individual PAGA claims pending arbitration is moot given the Court's ruling.